Filed 5/20/22  P. v. Birdsong CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and<br>    Respondent,<br><br>v.<br><br>PATRICK DWIGHT<br>BIRDSONG, JR.,<br><br>    Defendant and<br>    Appellant. | B312410<br><br>(Los Angeles County<br>Super. Ct. No. SA072721) |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Reversed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Patrick Dwight Birdsong, Jr. of murdering Richard Juarez and attempting to murder Richard De la Cruz on the evening of November 3, 2009.[1]  After the Legislature enacted Penal Code section 1170.95, Birdsong filed a petition for resentencing of his murder conviction.[2]  He also argued at a hearing on the petition for resentencing that he should be resentenced on his attempted murder conviction.  Although the trial court had appointed counsel for Birdsong, the trial court summarily denied the section 1170.95 petition before any party filed the briefs contemplated by section 1170.95, subdivision (c).

Birdsong contends the trial court committed prejudicial error because the jury was instructed about the natural and probable consequences doctrine with regard to his attempted murder conviction.  We agree with Birdsong and will reverse the trial court's order denying his section 1170.95 petition.

## BACKGROUND

"Shortly before 9:00 p.m. on the evening of November 3, [2009,] Richard Juarez and Richard De la Cruz had been sitting on a bench in Virginia Avenue Park in Santa Monica, with companions Chloe McCarty and Ashleigh Rodriguez.  De la Cruz belonged to the Santa Monica 13 gang; Juarez belonged to a gang in another territory, but was associated with De la Cruz and the Santa Monica 13 gang.  One or two African-American men

_____

[1] The jury also convicted Birdsong of street terrorism (see *People v. Martin* (July 30, 2014, B239366) [nonpub. opn.] at p. 5 (*Martin*)), but that conviction is not pertinent to this appeal.

[2] Further statutory references are to the Penal Code.

approached the group, one wearing a hooded gray sweatshirt over a red striped shirt, the other a black sweatshirt; one had a black beanie hat.  One . . . of the men fired several shots, killing Juarez.

"Witnesses heard about eight or more gunshots, and multiple muzzle flashes were visible on the dashboard video recorder of a police car parked nearby on Pico Boulevard.  After the shooting stopped, two men were seen running from the park, south across Pico Boulevard toward 22nd Street, one wearing a black sweatshirt, the other wearing a gray zip-up, hooded sweatshirt.  One was wearing a black beanie cap.

"A police officer who was parked nearby on Pico Boulevard heard the shots, saw the men running, and followed them in his car.  When he turned onto 22nd Street he could no longer see the men he had followed, but saw a car parked with its headlights on.  When the car pulled away as he shone his spotlight on it, the officer followed and stopped the car.

"After a backup officer arrived he detained the driver and passenger, [codefendants] Norman Lovan Cole and Sean Alex Mermer.  About 10 minutes later a police dog pulled [Birdsong] from under a parked van in a residential backyard on 22nd Street, near where Cole and Mermer had been parked.  The police later found [codefendant] Taaj Zakee Martin hiding under a tarp in a residential garage nearby on 21st Street.  He was wearing a white T-shirt, jeans, red shoes, but no sweatshirt.  The police found two abandoned handguns nearby, one with a silver barrel matching the description of the weapon used by one of the shooters.  They also found a black beanie hat and a dark hooded sweatshirt in the corner of the yard, and a gray sweatshirt under a car parked on 21st Street.  DNA testing linked the beanie cap and the black sweatshirt to Birdsong, with Mermer as a minor

3

contributor to the DNA on the cap. Gunshot residue was found on Martin and Birdsong, indicat[ing] their recent contact with or close proximity to a gun that had been fired.

"A search of the car revealed a cellphone registered to Martin, with DNA connecting Martin to it. Another phone found in the car was registered to Mermer's mother, at an address in Lancaster. Birdsong's fingerprints were on the Mermer phone, and on the car's front and rear passenger doors.

"De la Cruz, Rodriguez, and McCarty were unable to identify any of the [defendants]."[3] (*Martin*, *supra*, B239366 at pp. 3-4.)

All four defendants—Cole, Mermer, Martin, and Birdsong—were charged with murdering Juarez and attempting to murder De la Cruz, Rodriguez, and McCarty.[4] ( *Martin*, *supra*, B239366 at p. 4.) The jury convicted all four defendants of the first degree murder of Juarez and of the attempted premeditated murder of De la Cruz. (*Id.* at p. 5.) The jury concluded that Birdsong had not personally and intentionally discharged a firearm that caused Juarez's death, "[b]ut as to each of the four defendants[, the jury] found . . . to be true that a principal in the crime personally and intentionally discharged a firearm that caused Juarez's death, and that the offense was committed for the benefit of, at the direction of, or in association with a criminal

---

[3] As did the parties in their briefs, we draw this factual recitation from the background section of the opinion in Birdsong's direct appeal.

[4] Three of the defendants were also charged with street terrorism, and one of the defendants was charged with another murder that happened the same day. (*Martin*, *supra*, B239366 at p. 4.) None of those charges is relevant to this appeal.

4

street gang with the specific intent to promote, further[,] or assist in criminal conduct by gang members." (*Id.* at p. 5.)

We ordered the abstract of judgment corrected as to one of Birdsong's codefendants, but otherwise affirmed the defendants' convictions on their direct appeal. ( *Martin, supra,* B239366 at p. 41.)

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provide[d] a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

On October 16, 2020, Birdsong filed a petition under section 1170.95 alleging that: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to one of those two doctrines; (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 effective January 1, 2019; and (4) requesting the appointment of counsel.

The trial court appointed counsel for Birdsong by order dated October 19, 2020, and set the matter for hearing on

December 7, 2020. On December 7, 2020, the People requested and the trial court granted an extension of time to file a response to Birdsong's petition. On February 5, 2021, the People again requested an extension of time to respond to Birdsong's petition, and the trial court granted that request to April 21, 2021.

The trial court heard the matter on April 21, 2021. The trial court indicated that section 1170.95, subdivision (a) does not apply to attempted murder and that "as to the actual murder, [Birdsong] was either the actual killer or an aid[e]r or abettor in the actual killing and not—[the jury was not] instructed on felony murder or on the natural and probable consequences as to that count." Birdsong's counsel indicated on the record that denying the petition before the People filed a response and Birdsong filed a reply was improper and that the question of the applicability of section 1170.95 to attempted murder convictions was currently pending before the California Supreme Court.

The trial court denied Birdsong's petition and entered the following minute order: "The court has read and considered the defense's petition for resentencing pursuant to Penal Code section 1170.95, the People's response and other case information. [¶] The court denies the defense's petition pursuant to Penal Code section 1170.95 based on the jury instructions that were given at the time of trial."

Birdsong filed a timely notice of appeal.

In July 2021, the Supreme Court issued its opinion in *Lewis*, *supra*, 11 Cal.5th 952. In that opinion, the court concluded that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the

record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id.* at p. 957.) The trial court's failure to appoint counsel and afford a petitioner the opportunity to brief the section 1170.95 petition, the Supreme Court concluded, is subject to a harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Lewis*, at pp. 957-958.)

On October 5, 2021, the Governor signed Senate Bill No. 775 (S.B. 775), which became effective January 1, 2022. S.B. 775 amended section 1170.95 to include as eligible for resentencing persons convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2, subd. (a); § 1170.95, subd. (a).)

## DISCUSSION

The parties agree that the trial court erred when it denied Birdsong's petition before the People responded and before Birdsong had an opportunity to reply. We also agree. (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at p. 957.)

The question on this appeal is whether under *Watson*, *supra*, 46 Cal.2d 818, that error prejudiced Birdsong. (See *Lewis*, *supra*, 11 Cal.5th at pp. 957-958.)

### A. Murder

Birdsong does not contend here—nor could he—that the trial court's conclusion regarding his murder conviction was prejudicial. The jury was instructed on implied malice for first and second degree murder with CALCRIM No. 520, which contains the words "natural and probable consequences." But other courts have pointed out that although that instruction contains the words "natural and probable consequences," the language is a "distinctly different concept[ ]" in the context of

7

implied malice. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056, disapproved on another ground in *Lewis*, *supra*, 11 Cal.5th 952.) "This distinction . . . is critical because potential relief under section 1170.95 extends only to those convicted . . . by operation of the natural and probable consequence doctrine or of felony murder." (*Soto*, at p. 1056.) To find implied malice murder, the jury must have concluded that Birdsong "knew his act was dangerous to human life" and that he "deliberately acted with conscious disregard for human life." (CALCRIM No. 520.) "The natural and probable consequences doctrine, by contrast, is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' " (*Soto*, at p. 1058.)

Birdsong's ineligibility as a matter of law for resentencing under section 1170.95 for his murder conviction renders the trial court's error harmless as to that count. (See *Watson*, *supra*, 46 Cal.2d at p. 836.)

### B. Attempted Murder

Birdsong argues that because the jury was instructed on the natural and probable consequences doctrine and because there is no way to determine from the jury's verdicts whether they convicted him of attempted murder based on that theory, the trial court's order denying his section 1170.95 petition was prejudicial. The People argue that the jury's conclusion that the attempted murder was premeditated renders Birdsong ineligible as a matter of law for relief under section 1170.95 based on his attempted murder conviction.

8

The jury was instructed that it could find Birdsong guilty of attempting to murder McCarty, De la Cruz, and Rodriguez only if it first found him guilty of murdering Juarez, that "[d]uring the commission of murder of Richard Juarez a coparticipant in that murder of Richard Juarez committed the crime of attempted murder of Chloe McCarty, Richard De [l]a Cruz[,] and Ashleigh Rodriguez," and "[u]nder all the circumstances, a reasonable person in [his] position would have known that the commission of attempted murder of . . . McCarty, . . . De [l]a Cruz[,] and . . . Rodriguez was a natural and probable consequence of the commission of" Juarez's murder. The instruction told the jury that "[a] *coparticipant* in a crime is the perpetrator or anyone who aided and abetted the perpetrator." (Original italics.) And it told the jury that "[a] *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (Original italics.)

The jury in this matter found that the allegation that Birdsong had personally and intentionally discharged a firearm *causing Juarez's death* was *not true*. But the jury also separately concluded that Birdsong *had* personally and intentionally discharged a firearm for purposes of section 12022.53, subdivision (c).[5]

The People highlight the jury's finding that the attempted murder was "committed willfully, deliberately[,] and with premeditation." The People explain that the jury was instructed with CALCRIM No. 601 that "[t]he defendants acted *willfully* if

---

[5] We granted the People's request for judicial notice of portions of the record in Birdsong's underlying appeal. On our own motion, we take judicial notice of the entire record in case number B239366.

9

they intended to kill when they acted.  The defendants *deliberated* if they carefully weighted the considerations for and against their choice and, knowing the consequences, decided to kill.  The defendants *premeditated* if they decided to kill before acting."  (Original italics.)

The People argue that "[t]he key phrase in this instruction is 'the defendants.'  At the time of appellant's trial," the People argue, "juries were generally permitted to find a premeditation allegation true as to an attempted murder under a natural and probable consequences theory, even if the defendant did not personally premeditate.  [Citation.]  Instructions permitting this result stated that the jury could find the premeditation allegation true if '[t]he defendant *and/or a principal*' acted willfully and with premeditation and deliberation in the attempted murder, and told the jury to consider 'if *either* the defendant *or* a principal or both of them acted with that state of mind.' "  (Original italics.)

We disagree with the People's argument.  It is clear that the jury was instructed that the "defendants" acted a certain way if the jury drew certain other conclusions.  And we recognize that absent evidence to the contrary, jurors are *generally* presumed to have followed the court's instructions. (*People v. Washington* (2017) 15 Cal.App.5th 19, 26.)  Relying on that presumption, however, we must presume that the jury read and followed the *entire* instruction, which includes this language:  "*If you find the defendants guilty of attempted murder . . .* , you must *then* decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation."  (Italics added.)

The construction of the instruction on deliberation and premeditation, then, required the jury to first determine whether,

under any theory presented, Birdsong was guilty of attempted murder.  And the instruction regarding attempted murder would have allowed the jury to reach its conclusion based on attempted murder as a natural and probable consequence of Birdsong having aided and abetted someone else murdering a different person.[6]

While we view this case as close, we cannot say based on the arguments before us that Birdsong is ineligible for relief as a matter of law for section 1170.95 relief as to his attempted murder conviction.  The trial court's error as to that count was not harmless.  (See *Watson, supra*, 46 Cal.2d at p. 836.)

---

[6] We also note that the allegation the jury found true was that "the aforesaid attempted murder was committed willfully, deliberately[,] and with premeditation," and *not* that a specific defendant or the "defendants" had done so.  The distinction is obviously technical, but the consequences are substantial under the circumstances.  It appears to be an exercise in judicial factfinding at this point to try to parse out the jury's understanding of CALCRIM No. 601 based on the verdict forms as drafted and completed in this case.  (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 816.)

## DISPOSITION

The trial court's order is reversed.  The matter is remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


BENDIX, Acting P. J.


MORI, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.